365 So.2d 782 (1978)
Rogelio MEDEL, Appellant,
v.
REPUBLIC NATIONAL BANK OF MIAMI, a National Banking Corporation, Robert Paul, Burton A. Landy, Stanley Arthur Beiley and James E. Yacos, d/b/a Paul, Landy, Beiley & Yacos, a Partnership, and Michael Striar, Appellees.
Nos. 77-2546, 77-2591, 77-2592 and 77-2593.
District Court of Appeal of Florida, Third District.
December 19, 1978.
Rehearing Denied January 17, 1979.
*783 Stabinski, Funt, Levine & Vega, Jepeway, August, Gassen & Pohlig and Louis M. Jepeway, Miami, for appellant.
Knight, Peters, Pickle, Niemoeller & Flynn and Jackson L. Peters, Jeanne Heyward, Miami, for appellees.
Before HAVERFIELD, C.J., and PEARSON and KEHOE, JJ.
PEARSON, Judge.
The appellant, Rogelio Medel, filed suit for compensatory and punitive damages for the intentional infliction of emotional distress and conversion against the Republic National Bank of Miami, the law firm of Paul, Landy, Beiley & Yacos, and Michael Striar, an attorney employed by that law firm. It is apparent from all the allegations in the complaint that it is Attorney Striar's actions which are the basis of the claim for damages and that the claimed liability of the Republic National Bank and the law firm is through the application of the rule that a principal is liable for the acts of an agent.
Plaintiff Medel has brought these consolidated appeals which present a single point for our determination:
"Whether an attorney representing a judgment creditor, as well as his employer and principal, is liable for punitive damages where he does not utilize the prescribed methods to collect on the judgment, and instead by deceit and subterfuge gains entry and obtains the judgment debtor's personal property causing a breach of the peace?"
The defendants have restated the point so that it urges "undisputed evidence" that the attorney acted under "a bona fide and reasonable belief" that self-help was sanctioned under Florida law. But in either case, the question is whether the trial judge correctly determined that punitive damages were not allowable in this case.
These appeals arise from several orders in the same cause, all of which had the same effect insofar as the law of the case is concerned. The operative orders were (1) an order striking a claim for punitive damages and (2) an order granting defendants a partial summary judgment on the issue of punitive damages. Although there are some factual issues, which will be discussed later, the evidentiary matters before the trial judge at the time of the entry of the partial summary judgment present a fairly clear picture of Mr. Striar's activity on behalf of the law firm and the firm's client, the Republic National Bank.
Republic lent money to San Martin, Inc. The principal, Mario Perez, signed a collateral installment note and he and plaintiff Medel also signed guarantees. After the loan became delinquent, the matter was turned over to Paul, Landy, Beiley & Yacos (the Bank's law firm) for collection. The correspondence advised the attorneys that Medel was a good customer of the Bank and instructed them to contact him prior to taking any action.
Thereafter, the Bank, through its counsel, Paul, Landy, Beiley & Yacos, filed suit against San Martin, Inc., Mario Perez and Medel. Default judgment was entered against these defendants and a final judgment was entered in favor of the Bank in the sum of $11,530.17.
The lawyer who handled the suit on behalf of the Bank against defendants turned the file over to Michael Striar sometime in December, 1975. Subsequently, Striar talked with the lawyer approximately three times regarding the use of self-help to obtain satisfaction of the judgment. Striar was advised that the replevin statute and the Uniform Commercial Code allowed for self-help and that self-help had been used by a number of the firm's clients on several occasions under the applicable replevin statute to repossess items that were security for a debt.
Paul, Landy, Beiley & Yacos also represented Florida Lumber Company in a suit against Roda Enterprises, Inc. Medel was president and resident agent for Roda. Medel was noticed for a deposition in that case. *784 A new date was arranged for Medel's deposition. Striar testified that it was his understanding that Medel's attorney agreed to the rescheduling of Medel's deposition for Thursday, April 22, 1976. He arranged for a court reporter and an interpreter.
When Striar arrived at Medel's office at approximately 12:25 p.m. on April 22, 1976, the interpreter was waiting for him. Medel came out of his office and Striar, Medel and the interpreter waited in Medel's office for the court reporter. Striar, as he had previously planned to do, admired Medel's watch and asked to see it; Medel complied. Striar then admired Medel's ring and asked to see it; again Medel complied. In a similar manner, Medel also gave Striar his bracelet.
At this point, the court reporter arrived at the office and Striar advised Medel that he also represented the Republic National Bank of Miami who had a judgment against him (Medel) for $11,530.00, dated August 17, 1975. Striar told Medel that he was going to keep the items of jewelry and turn them over to the Bank. Medel was very upset and told Striar he could not leave with his jewelry. Thereafter, Striar took Medel's deposition. When they finished the deposition, Striar attempted to leave, but the doors were locked.
Medel then telephoned Sastre, president of the Bank, and yelled in Spanish to him. Sastre then talked with Striar, but there is conflict with regard to what was said, although Sastre testified that he told Striar to give the jewelry back. When the police arrived, one officer thought that Striar should return the jewelry. Striar told the officer he would not return it and asked him to call his legal advisor to confirm the fact that he had the right to retain the jewelry. Striar explained to the police that it was the law of the State of Florida that judgment creditors could resort to self-help to collect on a judgment if it did not involve breach of the peace.
The police gave him a choice; Striar could either return the jewelry and leave the building or the police would call their legal advisor, and if the legal advisor said that Striar was not authorized to keep the jewelry, the police would arrest him. Striar told them to go ahead and call their legal advisor.
After talking with the legal advisor, the police were informed that a judgment creditor could, in fact, resort to self-help if he did not commit a breach of the peace. At that point, Mr. Stabinski, Medel's lawyer, who had subsequently arrived at Medel's office, became extremely upset. The officers proceeded to leave and Striar got right in the middle of them and went out the door with them. Subsequently, the trial judge, in the case where judgment had been entered, held that Striar had no right to retain the jewelry and required Striar to return it to Medel. Medel then filed the present suit for compensatory and punitive damages.
Both parties agree that the leading case that we must consider is Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936). The appellant cites this case for the proposition that punitive damages may be awarded where torts are committed with fraud, actual malice, or deliberate violence or oppression, or when the defendant acts willfully or with such gross negligence so as to indicate a wanton disregard for the rights of others. The appellees cite the case for the proposition that a tort committed by mistake in the bona fide assertion of a supposed right will not warrant the giving of punitive damages where all the elements of aggravation are authorized to be included in the compensation award. Appellees also rely on General Finance Corporation of Jacksonville, Inc. v. Sexton, 155 So.2d 159 (Fla.1st DCA 1963); and Brock v. Maine, 293 So.2d 375 (Fla.4th DCA 1974).
There are numerous conflicts in the deposition testimony and there is some disputed correspondence between the parties concerning events in the record from which the trier of fact could have drawn certain inferences. We think that Striar and those for whom he acted cannot be absolutely protected from punitive damages by way of summary judgment because of the fact that Striar was acting as a lawyer under a misapprehension of the law. The fact that he *785 represented himself as an officer of the court exercising a legal right to convert the property of another is a factor to be considered by the trier of fact.
Whether this case presents facts which bring Striar's actions within the rule that punitive damages will not be awarded where a person in good faith claims a legal right without a breach of peace is an issue for trial. See Buie v. Barnett First National Bank of Jacksonville, 266 So.2d 657 (Fla. 1972).
The orders appealed are reversed and the cause remanded for further proceedings not in conflict with the views herein expressed.
Reversed and remanded.